# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER OCHOA HERNANDEZ,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>PENNSYLVANIA TOOL SALES &<br>SERVICE, INC., et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 17-cv-2027-W (KSC)<br><br>**ORDER DENYING MOTION TO INTERVENE [DOC. 37]** |

　　　Pending before the Court is Proposed Plaintiff-in-Intervention Starr Indemnity & Liability Company's motion to intervene. Plaintiff Javier Ochoa Hernandez opposes.

　　　The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1). For the following reasons, the Court **DENIES** the motion [Doc. 37].

//

//

## I. BACKGROUND

On October 7, 2015, Plaintiff Javier Ochoa Hernandez was working as a pipe fitter for UPS Industrial Services, LLC ("UPSI"). (*Compl.* [Doc. 1] ¶ 5.) While Plaintiff was standing near a co-worker operating a hand-held grinder, the grinding wheel broke apart striking and breaking Plaintiff's protective facial gear, and causing Plaintiff serious injuries, including the loss of his left eye. (*Id.*)

On October 3, 2017, Plaintiff filed this products-liability lawsuit alleging the grinding wheel was defective. Defendant Pennsylvania Tool Sales & Services, Inc., sold the allegedly defective product to Plaintiff's employer. (*Compl.* ¶ 2.) Defendant Radiac Abrasives, Inc., manufactured the wheel. (*Id.* ¶ 3.)

Starr Indemnity and Liability Company ("Starr") is Plaintiff's employer's workers' compensation carrier. (*Aziz Decl.* [Doc. 37-1] ¶ 4.) Since the accident, Starr has paid benefits to Plaintiff totaling $571,717.71. (*Id.*) Starr now moves to intervene under Federal Rule of Civil Procedure 24(a)(2) and 24(b). Plaintiff opposes the motion. Defendants had agreed to stipulate to Starr's intervention (*Aziz Decl.* [Doc. 37-1] ¶¶ 10, 12) and, therefore, have not filed an opposition.

## II. LEGAL STANDARD

"Intervention is governed by Fed.R.Civ.P. 24, which permits two types of intervention: intervention as of right and permissive intervention." <u>Nw. Forest Res. Council v. Glickman</u>, 82 F.3d 825, 836 (9th Cir. 1996). The Ninth Circuit applies a four-prong test in evaluating intervention as of right:

> (1) the application for intervention must be timely; (2) the applicant must have a 'significant protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 817-18 (9th Cir. 2001). For permissive intervention, the proposed intervenor must demonstrate: (1) the motion is timely; (2) there is an independent basis for jurisdiction; and (3) the intervenor's claim or defense shares a question of law or fact with the main action. League of United Latin American Citizens v. Wilson, 131 F.3d 1297, 1308 (9th Cir. 1996). Timeliness is a threshold requirement for intervention as of right and permissive. United States v. Washington, 86 F.32d 1499, 1503, 1507 (9th Cir. 1996).

The proposed intervenor "bears the burden of showing that all the requirements for intervention have been met." United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir, 2004). However, courts generally construe the requirements broadly in favor of intervention. United States v. City of L.A., 288 F.3d 391, 397-98 (9th Cir. 2002); Lee v. Pep Boys-Manny Moe & Jack of California, 2016 WL 324015, *2 (N.D. Cal. 2016) ("For both as-of-right and permissive intervention, courts generally construe Rule 24 liberally in favor of intervention.").

### III. INTERVENTION AS OF RIGHT

#### A. Timeliness

The Ninth Circuit considers three criteria in determining whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and the length of the delay." Wilson, 131 F.3d at 1302 (citing County of Orange v. Air California, 799 F.2d 535, 537 (9th Cir. 1986)). "In considering these factors, however, we must bear in mind that 'any substantial lapse of time weighs heavily against intervention.'" Id. (citing United States v. Washington, 86 F.3d 1499, 1503 (9th Cir. 1996)). Because timeliness is the threshold requirement, the court need not reach any other issue if it finds the motion was not timely. Id. at 1302.

### 1. Stage of the proceeding.

In its motion, Starr's discussion regarding timeliness consists of three sentences. (*Mot.* [Doc. 37] 5:24–6:1.)  Thus, in general, Starr's motion fails to adequately address the three timeliness factors.

With regard to the stage of the proceeding, Starr appears to contend the motion is timely because "it has not waited until the matter has gone to trial or a settlement has been achieved." (*Id.* 5:1–2.)  In its reply, Starr reiterates that the motion is timely because "[n]o trial date has been set" and the motion was filed "almost one year prior to the pre-trial scheduling conference." (*Reply* [Doc. 42] 6:11–13.)

The lack of a trial date, particularly in this case, says very little about the stage of the litigation.  In this district, trial dates are not set until the parties attend the final pretrial conference, which occurs after all pretrial proceedings are completed.  See CivLR 16.1.f.5.d.  Moreover, the Ninth Circuit has recognized that the lack of a trial date is not dispositive because the "timeliness inquiry demands a more nuanced, pragmatic approach." Wilson, 131 F.3d at 1303 (rejecting argument that motion was timely because no trial date had been set).

Starr's reliance on the amount of time remaining between the filing of its motion and the pretrial conference is also not reflective of what has occurred in this case. Initially, it is important to point out that this lawsuit was filed approximately two years and nine months before Starr filed its motion.  During that time, the pleadings in this case, including a Cross-Complaint for indemnity and declaratory relief filed by Defendant Pennsylvania Tool against Defendant Radiac (*see Cross-Compl.* [Doc. 8]), have been finalized.  The parties have attended the Early Neutral Evaluation Conference and there have been numerous case management conferences. (*See Minute Entries* [Docs. 15, 17, 26, 31.)  And although there has been no motion practice, there has been extensive discovery for approximately two years.  By May 2019, the parties exchanged initial disclosures, supplemental disclosures and written discovery. (*4/23/19 Jt. Mot.* [Doc. 23] 4:3–5.)  The parties have also taken depositions in Illinois, Ohio, Texas and

Washington. (*Id.* 4:11–26.) Aside from the issues inherent in having to schedule out of state depositions, certain depositions were particularly challenging logistically. (*See id* 4:20–26.) As of the hearing date on Starr's motion, the only discovery remaining was the expert witness depositions and subpoenas served on Starr. (*8/28/20 Jt. Mot. to Amend Sched. Order* [Doc. 47] 3:16–18.) In short, although the pretrial conference will not take place for approximately seven months, "a lot of water ha[s] already passed underneath [this] litigation bridge." Wilson, 131 F.3d at 1303.

Finally, Starr's contention that the motion is timely because the case has not settled is also unavailing. Cases settle at different points in the litigation, including near the end. The lack of a settlement is, therefore, a poor barometer for the stage of the litigation. More important in this case are the finalized pleadings, and extensive discovery conducted.

For all these reasons, the Court finds this factor weighs against finding Starr's motion is timely.

### 2. Prejudice to the parties.

Starr contends the parties will not be prejudiced because "there has been no settlement, and there is no change in the position of the parties." (*Mot.* 4:24–26.) Plaintiff responds that Starr's intervention will cause undue delay in trying the case and could cause prejudice by allowing Defendants to "assert counterclaims and/or additional affirmative defenses" and "seek to add new issues." (*Opp'n* [Doc. 38] 13:1–11.) In reply, Starr points out that it has "agreed to participate in . . . any further depositions that will be conducted in this matter" (*Reply* 6:13–15), "to cooperate with all counsel in moving this case forward" and "to participate in any rescheduled mediation" (*id.* 10:4–6).

"[A]s a general rule, intervenors are permitted to litigate fully once admitted to a suit." Wilson, 131 F.3d at 1304. The "inevitable effect" is "prolonging of the litigation to some degree." Id. Given that some delay is inevitable, Starr's statement that it has agreed to cooperate with counsel "in moving this case forward" (*Reply* 10:4–6) provides

no meaningful information about how its intervention would impact the litigation. For example, Starr does not indicate whether it would need to reopen discovery and, if so, how much discovery it would need to conduct. This issue is important given the amount and logistical complexity of the discovery conducted, which the parties stated was essentially complete six months *before* Starr filed its motion: "the vast majority of fact discovery has been completed. All that remains are the depositions of ANSI, Plaintiff and his wife."[1] (*1/22/20 Jt. Mot. to Amend Sched. Order* [Doc. 28] 5:11–12.)

Similarly, Starr's claim that there "is" no change in the parties' position is vague. It is unclear whether Starr is suggesting that if allowed to intervene, neither Defendant will seek to add other parties or claims. In April 2019, Defendants stated that they intended to seek leave to file third-party claims for negligence against Plaintiff's employer. (*4/23/19 Jt. Mot. to Amend. Sched. Order* 2:15–23.) But the deadline for joining parties had expired in May 2018, possibly explaining Defendants' decision not to seek leave. (*See 4/24/18 Sched. Order* [Doc. 18] ¶ 1.) If Starr is allowed to intervene and reopen the pleadings, Defendants could file cross-claims against Plaintiff's employer, undoubtedly causing additional delay. In his opposition, Plaintiff raised this concern, arguing Defendants "could assert counterclaims and/or additional affirmative defenses" and "seek to add new issues . . . ." (*Opp'n* [Doc. 38] 13:1–11.) Plaintiff also suggested that Defendants willingness to stipulate "might" have been "so they could respond and seek to add new issues. . . ." (*Id.* 13:13–15.) In its reply, Starr acknowledges the issue, but simply responds that "Plaintiff cites no specific facts . . . ." (*Reply* 10:3.)

Ultimately, the extent to which Starr's intervention will prejudice Plaintiff is the most difficult timeliness factor to evaluate. This is primarily due to Starr's vague statements that "there is no change in the position of the parties" (*Mot.* 4:24–26) and it has "agreed to . . . cooperate with all counsel in moving this case forward" (*Reply* 10:4–

---

[1] ANSI refers to the American National Standards Institute, which the parties planned to depose in New York or Washington D.C. (*1/22/20 Jt. Mot. to Amend Sched. Order* 3:20–23.)

6). Because Starr bears the burden of showing the requirements for intervention have been met (Alisal Water Corp., 370 F.3d at 919), the Court finds Starr has not demonstrated its intervention will not prejudice Plaintiff.  This factor, therefore, also weighs against finding Starr's motion is timely.

### 3. Reason for and length of delay.

A party "seeking to intervene must act as soon as he 'knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.'" Lee, 2016 WL 324015, *7 (quoting Peruta v. City of San Diego, 771 F.3d 570, 572 (9th Cir. 2014).  "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation." Id. (quoting Washington, 86 F.3d at 1503).

Here, Starr does not contend that it moved to intervene after discovering that its interests were no longer adequately protected.  And the record confirms Starr has been aware of this litigation since it began.  On October 5, 2017—two days after this lawsuit was filed—Plaintiff's attorney provided a copy of the Complaint to Starr's then-law firm, Laughlin, Falbo, Levy & Moresi, LLP.  (*O'Bryan Decl.* [Doc. 39] ¶ 10.)  Starr's attorneys then attended the March 5, 2018 Early Neutral Evaluation Conference.  (*Id.* ¶ 11.)  On May 29, 2020, Starr filed a Notice of Workers' Compensation Lien and Request for Notice in this case.  (*See Lien Notice* [Doc. 33].)

Despite its awareness and participation in this case since October 2017, Starr did not move to intervene until June 26, 2020.  (*See P&A*.)  Again, it does not argue it moved to intervene because it recently discovered its interest might be adversely affected by the outcome of the litigation.  (*See Mot.*)  Because Starr waited over thirty-two months before filing its motion, "it fights an uphill battle in its effort to intervene." See Wilson, 131 F.3d at 1302 (finding motion to intervene filed twenty-seven months after lawsuit filed was not timely).

Compounding Starr's substantial delay in moving to intervene is its complete failure to explain the reason for the delay. Nowhere in the motion or any supporting papers does Starr even attempt to explain why it waited over two and a half years to seek to intervene. Accordingly, this factor weighs heavily against allowing Starr to intervene.

In summary, given the amount of litigation that has occurred in this case, the potential prejudice to Plaintiff, and Starr's significant and unexplained delay in moving to intervene, the Court finds the motion is not timely.

### B.   Adequate Representation.

Although the Court finds Starr's motion is not timely, it will also briefly discuss whether its interests are being adequately represented. In evaluating this issue courts consider whether, "(1) the interests of a present party to the suit are such that it will undoubtedly make all of the intervenor's arguments; (2) the present party is capable of and willing to make such arguments; and (3) the intervenor would not offer any necessary element to the proceedings that the other parties would neglect." Cnty. of Fresno v. Andrus, 622 F.2d 436, 438-39 (9th Cir. 1980) (citing Blake v. Pallan, 554 F.2d 947, 954-55 (9th Cir. 1977)).

Similar to its timeliness discussion, Starr's motion fails to meaningfully address the three factors relevant to the adequate-representation element. Instead, Starr's analysis consists of two sentences: "None of the other parties have assured STARR that they will protect its statutory right of reimbursement. Accordingly, this motion must be granted to permit STARR to protect its statutory right of reimbursement." (*P&A* 5:24–26.) Aside from failing to address the three factors, this statement is extremely vague. Does it mean Starr asked for assurances and the parties refused? Did any of the parties previously assure Starr its interests were being protected?

Aside from Starr's vague statement, Plaintiff contends that throughout discovery, he has been seeking the medical expenses Starr paid for his injuries. (*Opp'n* 3:7–9.) "Plaintiff has also throughout the case claimed special damages in the form of lost wages

(earning capacity)" which "have always greatly exceeded the disability payments made to him by STARR as part of the workers compensation matter." (*Id.* 3:9–12.) Plaintiff further recognizes that "STARR has potential lien rights in this case and it has given official notice to all parties of its alleged lien claims. Plaintiff has protected, and continues to protect those potential lien rights by seeking medical expense and lost earning capacity damages in excess of the lien amounts." (*Id.* 8:1–4.)

In its reply, Starr does not dispute Plaintiff's argument, but contends its lien rights are not adequately protected because "the parties could settle the case without STARR's involvement and STARR will be deprived of its right to seek reimbursement of its lien because the statute of limitations expired on October 5, 2017." (*Reply* 8:9–12.) But this potential "impairment" of Starr's lien rights has existed since October 5, 2017, when the statute of limitations expired. Yet, Starr did not seek to intervene for more than two and a half years. Nor has Starr cited anything that Plaintiff or Defendants have done or argued (other than Plaintiff opposing the motion to intervene) that would justify its sudden concern that its lien rights may be impaired.

Finally, as Plaintiff suggests, Starr's interest may be protected by allowing it to intervene in the event the case settles or a judgment is reached in Plaintiff's favor. (*Opp'n* 16:7–17:1.) Defendants have not objected to this approach. The Court agrees with this approach. See Henrikson v. Turbomeca, S.A., 2007 WL 2215398 *4 (E.D.Cal. 2007) ("even though the court denies intervention now, [the moving party] is not thereby precluded from considering another motion to intervene prior to the distribution of any fund created by settlement or judgment"); Olden v. Hagerstown Cash Register, Inc., 619 F.2d 271 (3d Cir. 1989) (any concern with the apportionment of plaintiff's damages could be addressed by allowing the carrier "to act in protection of its interests once the verdict has been reached").

### IV. PERMISSIVE INTERVENTION

As set forth above, timeliness is a threshold issue for permissive intervention as well.  For the reasons discussed above, the Court finds Starr's motion is not timely and thus declines to allow permissive intervention.

### V. CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Starr's motion to intervene [Doc. 37] and **ORDERS** the parties to provide notice of settlement to Starr before seeking to dismiss this case.  The Court also declines to rule on Plaintiff's request to decide the choice of law issue as it is not necessary for the determination of this motion.

Dated:  December 7, 2020

Hon. Thomas J. Whelan
United States District Judge